IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BITTNER, | ) | **No.:**  2:23-cv-00765 |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FORD CITY BOROUGH** | ) | **Jury Trial Demanded** |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | *ELECTRONICALLY FILED.* |

## COMPLAINT

AND NOW, comes the Plaintiff, Lisa Bittner, by and through her attorneys, The Lindsay Law Firm PC, and Max Roesch, Esquire, and files the following complaint in civil action.

### I.      INTRODUCTION

1.  Plaintiff Lisa Bittner was employed by Ford City Borough for approximately three decades until she was abruptly terminated in July 2021.

2.  By subjecting to Bittner to discrimination and retaliation based on her age, Defendant Ford City Borough violated the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act.

### II.      JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Plaintiff's Federal claims under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

4.   Venue is proper in this District pursuant to 28 U.S.C. § 1392, as the acts that give rise to these claims occurred in this District. Additionally, Defendant employed Plaintiff in and regularly transacts business in this District.

### III.   PARTIES

5.   Lisa Bittner("Bittner") is a 60-year-old woman who resides in Armstrong County.

6.   Ford City Borough is a political subdivision in Armstrong County Pennsylvania.

### IV.   FACTS

7.   Bittner was appointed by then Ford City Borough Council President Lou Vergari as the Borough Secretary more than three decades ago on.

8.   Throughout her tenure as Borough Secretary, Bittner has consistently received high praise and accolades for her conscientiousness and thorough work ethic.

9.   Although the Borough did not routinely perform formal evaluations until 2019,

10. In November, 2020, however, Bittner noticed a distinct change in how she was being treated by the Borough – specifically by Council President Carol Fenyes.

11. Bittner had routinely attended biweekly meetings with the Fenyes, and a Council Vice President.

12. Bittner's attendance at the biweekly meetings was important because one of Bittner's responsibilities was to ensure the Borough was compliant with its financial obligations.

13. The meetings were discontinued when the Borough hired a Borough Manager to assume some the responsibilities, and never resumed following the Borough Manager's departure in November 2020.

14. On December 30, 2020, Fenyes abruptly demanded, via text message, that Bittner urgently provide her with her office keys so Fenyes could access the personnel files, claiming

that she needed to access the files in support of upcoming union negotiations scheduled for January 5, 2021.

15. Bittner was concerned because the keys provided access to a variety of sensitive documents, including the personnel files and payroll drawer, for which Bittner was responsible.

16. Bittner's fears were proven well founded in February 2021 when she discovered a Zoning file was missing from the office.

17. Bittner forwarded an email to the elected officials and the zoning officer asking if anyone had the file.

18. Council President Fenyes responded that she had the file and would deliver it to the office.

19. Later, Bittner was told to schedule a second Zoning Hearing for the former FCHS property.  When she asked why the $500 fee had not been paid, ordinarily a prerequisite to scheduling the Hearing, Fenyes claimed the fee had been waived.

20. In April 2021, Fenyes issued an interoffice memorandum directing Bittner to stop verifying working hours for the Police and Public Works departments.

21. Shortly thereafter, on April 23, 2021, Fenyes performed Bittner's annual performance review.

22. Despite decades of exemplary performance, Fenyes was abruptly critical of Bittner, accusing her sloppy work and "lack of attention to detail" with respect to borough records, and criticizing her for working extra hours.

23. Fenyes continued to treat Bittner icily through the remainder of the spring and into the summer, periodically hounding her over minor mistakes and accusing her of incompetence based on minor issues, such as mistakes made by Borough employees in filling out tax documents.

24. On July 2, 2021 Fenyes sent Bittner an email abruptly demanding that Bittner provide her with the keys to Bittner's cubicle and her book of passwords for Borough accounts.

25. As Bittner was solely responsible for maintaining the integrity of many of the Borough accounts, she felt uncomfortable simply turning over unfettered access to Fenyes, and reached out to the former Borough solicitor for guidance.

26. Shortly thereafter, Bittner sent an email to the Borough Council, requesting a meeting to clarify her role in the Borough vis a vis Fenyes and to ensure the integrity of Borough finances.

27. On July 10, 2021, while at home on a prescheduled vacation, Bittner received a memorandum from the Borough council setting the meeting that Bittner had requested for July 19, 2021.

28. On July 12, 2021 Bittner returned from vacation to find on her desk a note from Fenyes directing her to pay herself all outstanding comp time, which amounted to approximately $36,137.66.

29. Concerned about the tax implications, Bittner reached out to Fenyes to inquire regarding what was going on.

30. At Fenyes direction, Council Vice President Klukan then immediately called Bittner into a meeting with Fenyes, Klukan, and Councilwoman Bryant.

31. In the meeting, Fenyes accused Bittner of bungling the paperwork associated with a judicial sale, claiming that Bittner's mistake had "cost the Borough $13,000".

32. Bittner, who was neither responsible for the paperwork, nor even aware of it, was taken aback.

33. Fenyes then reiterated her demand that Bittner turn over her keys and password book.

34. Bittner responded that a meeting had been scheduled for July 19th to discuss that issue.

35. Fenyes then ended the meeting, stating "you're holding up Borough business, we are suspending you for five days."

36. Two days later on July 12, 2021, Bittner's son informed her that the Borough Chief of Police was looking for her.

37. Bittner called Chief Haslett and arranged to meet him at her house on July 15th 2021. On the 14th, Chief Scott Haslett handed her two envelopes and explained "I don't know what's in them, but I'm supposed to collect all Borough property.

38. One of the envelopes contained a check for Bittner's outstanding comp time, the other a letter terminating her employment with the Borough.

39. Chief Haslett related that he had been instructed to obtain a search warrant if he did not return with the password book.

40. Bittner gathered all the Borough property in her possession and conveyed it to Chief Haslet later that morning.

41. Within days of Bittner's termination, Lindsey Weige who had been employed by Borough as a part time secretary in the police department assumed Bittner's former duties.

42. Weige is in her mid 20's.

43. The outstanding comp time represented hours that Bittner had worked in excess of 40 hours per week.

## COUNT I: AGE DISCRIMINATION IN EMPLOYMENT ACT

44. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

45. Plaintiff is a member of a protected class in that she was over the age of 40.

46. Plaintiff was highly qualified for the position at issue.

47. Plaintiff was replaced by an individual much younger than Plaintiff and much less qualified than Plaintiff

48. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff because of her age.

49. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

50. Plaintiff believes, and therefore avers, that the Defendant's acts of discrimination were intentional.

51. Plaintiff has exhausted her administrative remedies under the ADA and the Pennsylvania Human Relations Act

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to award judgment in favor of the Plaintiff and against the Defendant in an amount in excess of the arbitration limits, and, as part of said award to grant the Plaintiff the following damages:

    a.   Actual and consequential damages as may be proven, plus interest;

    b.   Compensatory damages to compensate for the pain, suffering and humiliation that Plaintiff suffered as a result of the Defendant's unlawful actions; and

    c.   Plaintiff further prays for an award of costs incurred in this action plus a reasonable attorney's fee as provided in the Pennsylvania Human Relations Act, 43 P.S. Section 962.

### COUNT II: FAIR LABOR STANDARDS ACT

52. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

53. Bittner's comp time was paid at her regular hourly rate rather than one and a half times her regular rate.

54. Bittner also worked numerous overtime hours that were never compensated at all.

55. Under the FLSA, Defendant was required to compensate Plaintiff at an overtime rate of one and a half times her regular rate.

56. Plaintiff is entitled to damages equal to the difference between the overtime rate and the lesser amount actually paid to Plaintiff, as well as the overtime rate for hours that were never compensated.

57. Further, Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime wage, as well as attorneys' fees and costs, as described in FLSA Section 16(b), 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to award judgment in favor of the Plaintiff and against the Defendant in an amount in excess of the arbitration limits.

### Count III – Violations of the Pennsylvania Human Relations Act

58. The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

59. Bases on the foregoing, in subjecting Plaintiff to disparate treatment and a hostile environment based on her gender, and retaliating against her for opposing conduct made unlawful under the PHRA, Ford City Borough violated the PHRA.

60. As a result of Ford City Borough's violations of the PHRA, Plaintiff lost wages and other emoluments of employment, and suffered from emotional distress, anxiety, mental anguish, and humiliation.

Respectfully submitted,
THE LINDSAY LAW FIRM, P.C.,

/s/Max B. Roesch

Max Roesch, Esquire
PA I.D. No.  326577
110 East Diamond Street
Suite 301
Butler, PA  16001
Phone: (724) 282-6600